UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PAMELA ELLA LEWIS,
    *Plaintiff*,

v.

NANCY A. BERRYHILL,
    *Defendant*.

No. 3:18-cv-00209 (JAM)

**RULING ON CROSS MOTIONS TO REVERSE AND AFFIRM DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Pamela Ella Lewis asserts that she is disabled and unable to work due to several conditions. She filed this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision denying her application for social security disability insurance benefits. For the reasons set forth below, I will grant in part Lewis's motion to remand the decision of the Commissioner (Doc. #24), and I will deny the Commissioner's motion to affirm the decision of the Commissioner (Doc. #26).

**BACKGROUND**

I refer to the transcripts provided by the Commissioner. *See* Doc. #23-1 through Doc. #23-9. Lewis filed an application for social security disability income on January 9, 2014, alleging a disability beginning on January 11, 2013. Doc. #23-6 at 2–3. Her claim was initially denied on March 17, 2014, Doc. #23-5 at 7–12, and denied again upon reconsideration on May 30, 2014. *Id.* at 19–28. She then filed a request for a hearing on July 7, 2014. *Id.* at 29–30.

Lewis appeared and testified at a hearing before Administrative Law Judge (ALJ) Ronald J. Thomas on February 27, 2016. Doc. #23-3 at 72. She was represented by counsel. *Ibid.* A vocational expert testified at the hearing. *Ibid.* On June 24, 2016, the ALJ issued a decision

1

concluding that Lewis was not disabled within the meaning of the Social Security Act. *See id.* at 34. The Appeals Council denied Lewis's request for review on September 12, 2017. *Id.* at 6. Lewis then filed this federal action on February 2, 2018. Doc. #1.

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with his physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether she qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does

2

not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)–(v). In applying this framework, an ALJ may find a claimant to be disabled or not disabled at a particular step and may make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; at Step Five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ concluded that Lewis was not disabled within the meaning of the Social Security Act. At Step One, the ALJ determined that Lewis last met the insured status requirement of the Social Security Act on December 31, 2016. Doc. #23-3 at 19. The ALJ concluded Lewis had not engaged in substantial gainful activity since January 11, 2013, the date of the alleged onset of her disability, through her date of last insured. *Ibid.* At Step Two, the ALJ found that Lewis suffered from the following severe impairments: "fibromyalgia, obstructive sleep apnea with shortness of breath, obesity, anxiety and depression." *Ibid.* The ALJ also took note of evidence that Lewis also had been evaluated and treated for "gastroesophegal reflux disease (GERD), irritable bowel syndrome, migraine headaches and left foot neuropathy," but did not find any of those conditions to constitute a severe impairment. *Ibid.*

At Step Three, the ALJ determined that Lewis did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21. The ALJ did determine,

however, that Lewis had moderate difficulties "[w]ith regard to concentration, persistence, or pace." *Id.* at 23.

The ALJ found that, through the date of last insured, Lewis "had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" but that she needs "a work environment free from concentrated exposure to poor ventilation, temperature extremes, fumes, dusts, gases, odors, humidity and wetness." *Id.* at 25. The ALJ also found that Lewis "can only occasionally balance, twist, squat, bend, kneel, crawl and climb, and can have occasional interaction with supervisors, coworkers and the general public." *Ibid.* At Step Four, the ALJ then concluded that Lewis "is capable of performing past relevant work as an administrative assistant, payroll clerk and graphic designer." *Id.* at 32. The ALJ relied on the testimony of a vocational expert in arriving at this conclusion. *Ibid.*

The ALJ also made an alternative Step Five finding, where, after considering Lewis's age, education, work experience, and residual functional capacity ("RFC"), the ALJ concluded that, through the date of last insured, there were jobs that Lewis could perform that existed in significant numbers in the national economy. *Id.* at 33. As with the ALJ's Step Four finding, in reaching this conclusion, the ALJ relied on the testimony of a vocational expert. *Ibid.* The ALJ ultimately concluded that Lewis was not disabled within the meaning of the Social Security Act. *Ibid.*

## Discussion

### *The ALJ's Step Four and Step Five Analysis*

Lewis argues that the ALJ erred when he grounded his Step Four analysis in a hypothetical he posed to the vocational expert that did not include the moderate difficulties in Lewis's concentration, persistence, or pace that he found at Step Three. Doc. #24-1 at 29–30

(citing Doc. #23-3 at 23–24); *see also* Doc. #23-3 at 32–33. I agree. The Second Circuit has made clear that when posing a hypothetical to a vocational expert, "an ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace." *McIntyre*, 758 F.3d at 152. Here, the ALJ's hypothetical did not include any of those limitations. *See* Doc. #23-3 at 101.

Still, the ALJ's error does not automatically require a remand. The Second Circuit has held that an error like the one the ALJ made here is harmless where either (1) the medical evidence before the ALJ demonstrates that a claimant can engage in unskilled work and the ALJ's hypothetical is limited to such work, or (2) the hypothetical otherwise implicitly accounts for a claimant's limitations in concentration, persistence, and pace. *See McIntyre*, 758 F.3d at 152. In this case, however, the record does not reflect either of these circumstances. First, the ALJ did not limit his hypothetical to unskilled work, and the vocational expert only testified to examples of Lewis's own past work in semi-skilled jobs, as well as to other examples of semi-skilled jobs in general. Doc. #23-3 at 101–02. Second, there is no evidence in the record that the ALJ's hypothetical included any implicit account for limitations on concentration, persistence, or pace. *See ibid.* The Commissioner has not argued otherwise. *See* Doc. #26 at 10–12. Indeed, the record reveals that, just prior to posing the hypothetical on which he ultimately relied, the ALJ asked the vocational expert to consider someone "unable to maintain competitive pace in the workplace," Doc. #23-3 at 100. If anything, the hypothetical the ALJ ultimately relied upon was specifically designed to exclude those limitations. I accordingly conclude that the ALJ did not make a harmless error when he posed a hypothetical that excluded Lewis's concentration, persistence, and pace limitations. *See Rousey v. Comm'r Soc. Sec.*, 285 F. Supp. 3d 723, 742–43

(S.D.N.Y. 2018) (error was not harmless when ALJ failed to consider non-severe mental impairments while concluding claimant could do semi-skilled work).

The Commissioner argues that, because the ALJ made an alternative Step Five finding, remand is unnecessary if that finding is supported by substantial evidence. Doc. #26 at 12. But the ALJ's Step Five finding was not supported by substantial evidence, because it relied on the same hypothetical that the ALJ used for his Step Four findings. *See* Doc. #23-3 at 33, 101–02. The *McIntyre* framework applies to and was originally decided in the context of a Step Five determination. *See McIntyre*, 758 F.3d at 151. Accordingly, the ALJ's finding at Step Five was in error and not harmless.[1]

### *Other Claims of Error*

Lewis also claims that the ALJ erred in several other respects. Lewis argues that the ALJ failed to fulfill his affirmative duty to develop the administrative record, Doc. #24-1 at 13–23, erred in concluding that certain medical conditions did not constitute severe impairments, *id.* at 23–26, made other errors in devising a hypothetical for the vocational expert, *id.* at 26–29, and failed to properly consider her severe and non-severe impairments in combination with each other—including pain and obesity, *id.* at 25, 31–34.[2]

---

[1] Lewis briefly asks that I enter an order to reverse the decision of the Commissioner and award benefits, rather than remand the Commissioner's decision for further proceedings. Doc. #24-1 at 35. Lewis appears to base this request on the theory that if the ALJ had included her moderate difficulties in concentration, persistence, or pace in the hypothetical he posed to the vocational expert, I can "reasonably assume" that she would have been off-task for more than 10% of the workday and thus unable to work. *Id.* at 31. According to Lewis, a remand would be unnecessary for any purpose other than calculating benefits. *Id.* at 35. But because "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled," *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999), I will not make factual determinations reserved for the Commissioner.

[2] Lewis also claims that the ALJ erred at Step Three by evaluating whether Lewis "met" the arthritis listing, rather than whether she "medically equaled" the listing—a determination Lewis contends can only be made by a physician. This argument is meritless. Lewis cites no principle of law for this proposition, and courts regularly uphold Step Three determinations about medical equivalence. *See, e.g.*, *Watson v. Berryhill*, 732 F. App'x 48, 50–51 (2d Cir. 2018).

While Lewis claims that the ALJ erred when he neither admitted source statements nor sought further records from Dr. Spiegel, the neurologist who treated Lewis for fibromyalgia, nor from Dr. Dejesus, a podiatrist who Lewis had seen shortly prior to her hearing, Doc. #24-1 at 13–17, the Commissioner contends that the ALJ fulfilled his duty by holding the record open for Lewis's counsel to submit additional documents, and that Lewis's counsel failed to do so, Doc. #26 at 5–6; *see also* Doc. #23-3 at 16, 106.

The ALJ has a duty "to investigate and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). This duty arises from the Commissioner's regulatory duty to develop a complete medical record before making a disability determination, 20 C.F.R. § 404.1512(b)(1). Of course, the duty to develop the record has limits. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information[.]" *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

In this case, the ALJ determined that Lewis suffers from fibromyalgia, *see* Doc. #23-3 at 19, a neurological condition, and noted that Lewis had testified that Dr. Spiegel was her treating neurologist, *id.* at 16. "[T]he opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). When the ALJ omitted Dr. Spiegel's opinions, that omission may have significantly influenced the rest of the ALJ's findings, including Lewis's remaining claims of error. On

7

remand the ALJ should further develop the record by seeking medical source statements from Lewis's treating physicians.

In light of this Court's order of remand, it is not necessary to evaluate Lewis's other remaining claims of error at this time. The Court recommends that the ALJ on remand incorporate any new evidence into his analysis and consider the combined effect of all the impairments Lewis experiences—both severe and not. *See Dixon v. Shalala*, 54 F.3d 1019, 1033 (2d Cir. 1995) ("the SSA must evaluate [a claimant's impairments'] combined impact on a claimant's ability to work, regardless of whether every impairment is severe").

## CONCLUSION

For the foregoing reasons, Lewis's motion to reverse the decision of the Commissioner (Doc. #24) is GRANTED IN PART insofar as the Commissioner's decision is REMANDED for reconsideration, and the Commissioner's motion to affirm the decision of the Commissioner (Doc. #26) is DENIED.

It is so ordered.

Dated at New Haven this 19th day of November 2018.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge